# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, | ) ) ) | |
| Plaintiff, | ) ) | Civil File No. |
| v. | ) ) | |
| MORRIS PACKAGING, LLC; MORRIS CONVERTING, LLC; GREG BELOW; JOSEPH FIORE; and GATEWAY PACKAGING COMPANY, LLC; | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes Plaintiff, Selective Insurance Company of the Southeast ("Selective"), by and through counsel, and for its Complaint for Declaratory Judgment against Defendants, Morris Packaging, LLC, Morris Converting, LLC, Greg Below, Joseph Fiore, and Gateway Packaging Company, LLC, it states as follows:

## PARTIES

1.     Plaintiff Selective is an insurance company incorporated under the laws of the State of Indiana with its principal place of business in the State of New Jersey.

2.     Defendant Morris Packaging, LLC ("Morris Packaging") is a limited liability company organized under the laws of the State of Illinois with its principal place of business in the State of Illinois.  Morris Packaging may be served through its registered agent, James R. Morris, 211 Williamsburg Drive, Suite A, Bloomington, Illinois 61704-7735.  Morris Packaging is comprised of the following sole member:

     a.     James Morris, who, at all relevant times, was a citizen of Illinois.

301806673v1 1007381

3.     Defendant Morris Converting, LLC ("Morris Converting") is a limited liability company organized under the laws of the State of Missouri with its principal place of business in the State of Missouri.  Morris Converting may be served through its registered agent, Hallie H. Gibbs II, 3225 Emerald Lane, Suite A, Jefferson City, Missouri, 65109.  Morris Converting is comprised of the following sole member:

a.     Hallie H. Gibbs, who, at all relevant times, was a citizen of Missouri.

4.     On information and belief, defendant Greg Below ("Below") was at all relevant times herein a citizen of the State of Wisconsin and can be served at 725 Arvi Lane, Antigo, Wisconsin 54409.

5.     On information and belief, defendant Joseph Fiore ("Fiore") was at all relevant times herein a citizen of the State of New Jersey and can be served at 105 Hatfield Street, Caldwell, New Jersey 07006.

6.     Defendant Gateway Packaging, LLC ("Gateway Packaging") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of Missouri.  Gateway Packaging may be served through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.  Gateway Packaging is comprised of the following members:

a.     Roger Miller, who, at all relevant times, was a citizen of Illinois; and

b.     Rebecca Miller, who, at all relevant times, was a citizen of Illinois.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as all Defendants are citizens of different states than Plaintiff, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Specifically, the case relates to

2

insurance policies providing well over $75,000 in coverage. Additionally, the underlying lawsuit seeks damages far in excess of $75,000.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## THE UNDERLYING LAWSUIT

9.     On or about March 6, 2018, Gateway Packaging filed a Complaint against Morris Packaging, Morris Converting, Below, Fiore, and another entity in the United States District Court for the Western District of Missouri under Case Number 4:18-cv-00177-BCW (the "*Gateway Packaging* Lawsuit"). (A copy of the *Gateway Packaging* Lawsuit is attached hereto as **Exhibit A** and incorporated herein by reference.)

10.     The *Gateway Packaging* Lawsuit alleges that Gateway Packaging is a manufacturer of flexible packaging products and is particularly known for manufacturing specialty bags for the pet food industry. (Ex. A, ¶¶ 13-15.)

11.     According to the *Gateway Packaging* Lawsuit, commencing on about August 23, 2012, Below became employed by Gateway Packaging as a business development manager of sales. (Ex. A, ¶ 18.)

12.     The *Gateway Packaging* Lawsuit alleges that, as part of his employment, Below signed a non-disclosure and confidentiality agreement preventing him from disseminating Gateway Packaging's trade secrets or other confidential information. (Ex. A, ¶¶ 19-20.)

13.     The *Gateway Packaging* Lawsuit alleges that, commencing on about April 26, 2013, Fiore became employed by Gateway Packaging as a vice president of sales and marketing. (Ex. A, ¶ 23.)

14.     The *Gateway Packaging* Lawsuit alleges that, as part of Fiore's employment, he signed a non-disclosure and confidentiality agreement providing that he must hold in strict

3

301806673v1 1007381

confidence all trade secrets and other confidential information learned while employed at Gateway Packaging. (Ex. A, ¶¶ 24-26.)

15.    The *Gateway Packaging* Lawsuit alleges that Schell & Kampeter, Inc. a/k/a Diamond Pet Foods ("Diamond") manufactures private label dog food for Costco Wholesale Corporation ("Costco") under Costco's Kirkland brand. (Ex. A, ¶ 28.)

16.    The *Gateway Packaging* Lawsuit alleges that Diamond purchases the packaging for the dog food from third parties. (Ex. A, ¶ 29.)

17.    The *Gateway Packaging* Lawsuit alleges that, prior to 2013, Diamond purchased substantially all of its flexible packaging materials from Morris Packaging. (Ex. A, ¶ 30.)

18.    The *Gateway Packaging* Lawsuit further alleges that Diamond allegedly became dissatisfied with the performance of Morris Packaging's bags. (Ex. A, ¶ 30.)

19.    The *Gateway Packaging* Lawsuit alleges that, in about April 2013, Below contacted Andy Kampeter ("Kampeter") at Diamond to express Gateway Packaging's interest in producing a product for Diamond. (Ex. A, ¶ 31.)

20.    The *Gateway Packaging* Lawsuit alleges that, in May 2013, Below and Kampeter allegedly had a telephone call in which Below offered to send samples to Kampeter. (Ex. A, ¶ 32.)

21.    The *Gateway Packaging* Lawsuit further alleges that, in order to send samples to Kampeter, Below needed to have Kampeter execute a non-disclosure agreement, which Kampeter allegedly did on about May 13, 2013. (Ex. A, ¶¶ 33-48.)

22.    The *Gateway Packaging* Lawsuit alleges that references to the aforementioned non-disclosure agreement were allegedly deleted from Below's emails. (Ex. A, ¶ 49.)

301806673v1 1007381

23.     The *Gateway Packaging* Lawsuit alleges that, in June 2013, Below and Fiore met with Kampeter.  (Ex. A, ¶ 51.)

24.     The *Gateway Packaging* Lawsuit further alleges that, at the aforementioned meeting, Kampeter asked Gateway Packaging to work collaboratively with Diamond to provide a puncture resistant bag for Diamond's 40-pound bags of dog food.  (Ex. A, ¶¶ 52-53.)

25.     The *Gateway Packaging* Lawsuit alleges that Kampeter hoped that such a puncture resistant bag would be superior to the bags manufactured by Morris Packaging.  (Ex. A, ¶¶ 55-56.)

26.     The *Gateway Packaging* Lawsuit alleges that developing such a bag would be difficult, technically challenging, and time consuming.  (Ex. A, ¶ 57.)

27.     The *Gateway Packaging* Lawsuit alleges that Gateway Packaging and Diamond set out to develop a pinched-bottom, open-mouth ("PBOM") hybrid bag (i.e., composed of a nylon outer shell and a paper inner lining).   (Ex. A, ¶¶ 58-59.)

28.     The *Gateway Packaging* Lawsuit further alleges that this PBOM hybrid bag would be composed of 100 gauge biaxially oriented nylon, making it unique from other hybrid bags on the market.  (Ex. A, ¶ 60.)

29.     The *Gateway Packaging* Lawsuit alleges that the development of the bag was replete with technical hurdles that took significant time and money to overcome.  (Ex. A, ¶ 63.)

30.     For example, the *Gateway Packaging* Lawsuit alleges that Gateway Packaging and Diamond allegedly needed to determine the proper application of a hot melt that could be used to seal the liner and outer seem of the bag and to seal the open mouth once the bag was filled with dog food. (Ex. A, ¶ 64.)

301806673v1 1007381

31.     As another example, the *Gateway Packaging* Lawsuit alleges that Gateway Packaging and Diamond needed to determine the right amount of adhesives and cold glues that would avoid smearing while still holding the bag together. (Ex. A, ¶ 65.)

32.     The *Gateway Packaging* Lawsuit further alleged that Gateway Packaging and Diamond would also need to develop a bag that would be presentable to Costco, meaning the bag would need to avoid the dimpling effects of pet food. (Ex. A, ¶ 66.)

33.     The *Gateway Packaging* Lawsuit alleges that, in sum, "[t]he challenge for Gateway was developing a bag that was robust enough to not only withstand the strains of customer traffic and shopping carts in Costco but also a bag that could be used to package pet food at Diamond's headquarters in Meta, Missouri, as well as its other manufacturing plants" in other states. (Ex. A, ¶ 67.)

34.     Relatedly, the *Gateway Packaging* Lawsuit alleges that each plant had its own idiosyncracies and unique aspects that would need to be addressed. (Ex. A, ¶ 68.)

35.     The *Gateway Packaging* Lawsuit alleges that Gateway Packaging's development began in earnest in 2014. (Ex. A, ¶ 70.)

36.     The *Gateway Packaging* Lawsuit alleges that, by 2015 (and after much trial and error), Gateway Packaging allegedly ascertained the proper adhesive coating to be applied. (Ex. A, ¶ 72.)

37.     The *Gateway Packaging* Lawsuit further alleges that it would be extremely difficult to reverse engineer the adhesive glues, cold glues, and hot melts used to manufacture the bag. (Ex. A, ¶ 73.)

38.     The *Gateway Packaging* Lawsuit alleges that Below and Fiore gained possession of the bag's specifications when they were copied on certain internal emails. (Ex. A, ¶ 74.)

301806673v1 1007381

39.     The *Gateway Packaging* Lawsuit alleges that Gateway Packaging "spent significant time and money working to find the right hot melt and the right manufacturing conditions for producing the 100 ga BON hybrid bag. This included identifying particular types of hot melts to be used, producing bags with that particular hot melt, and then running those bags in Diamond facilities using different manufacturing conditions to see how they would fare in a packaging environment." (Ex. A, ¶ 80.)

40.     The *Gateway Packaging* Lawsuit further alleges that Gateway Packaging conducted numerous tests at Diamond's facility in Meta, Missouri. (Ex. A, ¶¶ 82-86.)

41.     The *Gateway Packaging* Lawsuit alleges that it was in November 2016 that it became apparent that the new bag had been successfully developed and was ready for Costco. (Ex. A, ¶ 92.)

42.     The *Gateway Packaging* Lawsuit alleges that on or about November 22, 2016, Below allegedly obtained a confidential specifications sheet reflecting the technical data used in the production of the bags. (Ex. A, ¶¶ 93-94.)

43.     The *Gateway Packaging* Lawsuit alleges that Below passed this sheet to Kampeter. (Ex. A, ¶ 95.)

44.     The *Gateway Packaging* Lawsuit alleges that Morris Packaging is a direct competitor of Gateway Packaging. (Ex. A, ¶ 102.)

45.     The *Gateway Packaging* Lawsuit alleges that, sometime in 2016, Jim Morris ("Morris"), the principal owner and/or manager of Morris Packaging, approached Fiore with an offer of employment. (Ex. A, ¶ 101.)

301806673v1 1007381

46. The *Gateway Packaging* Lawsuit further alleges that the job offer was based on Morris' desire to utilize Fiore's knowledge of Gateway Packaging's ongoing business dealings and existing customer base. (Ex. A, ¶ 104.)

47. The *Gateway Packaging* Lawsuit alleges that, by late 2016, Fiore ceased doing any work for Gateway Packaging. (Ex. A, ¶ 106.)

48. The *Gateway Packaging* Lawsuit further alleges that, soon thereafter, Fiore began his employment at Morris Packaging, as vice president of sales and marketing. (Ex. A, ¶ 108.)

49. The *Gateway Packaging* Lawsuit further alleges that, in late 2016, Below was approached with an invitation to leave Gateway Packaging and to work for Morris Packaging. (Ex. A, ¶ 114.)

50. The *Gateway Packaging* Lawsuit alleges that Fiore encouraged Below to accept employment with Morris Packaging. (Ex. A, ¶ 115.)

51. The *Gateway Packaging* Lawsuit further alleges that Below's last day of work with Gateway Packaging was March 6, 2017, at which point he began work at Morris Packaging in a similar capacity as he had worked at Gateway Packaging. (Ex. A, ¶¶ 116-117.)

52. The *Gateway Packaging* Lawsuit alleges that, within weeks of Fiore's and Below's departures from Gateway Packaging, Morris Packaging began working with Diamond, utilizing Gateway Packaging's specifications to produce bags that could be used for Diamond's sales to Costco. (Ex. A, ¶ 123.)

53. The *Gateway Packaging* Complaint alleges that, in 2017, Gateway Packaging learned that Morris Packaging (in tandem with another entity) were producing a competitor bag for Diamond. (Ex. A, ¶¶ 124-125.)

8

54.     The *Gateway Packaging* Lawsuit further alleges that it was not until Fiore and Below began their employment with Morris Packaging that this competitor bag was produced for Diamond.  (Ex. A, ¶ 126.)

55.     The *Gateway Packaging* Lawsuit alleges that Gateway Packaging spent more than $2,000,000 in developing the hybrid bag for Diamond.  (Ex. A, ¶ 129.)

56.     The *Gateway Packaging* Lawsuit also estimates that, but for the improper acts of the defendants, Gateway would have generated approximately $7,800,000 in annual sales to Diamond.  (Ex. A, ¶ 132.)

57.     In Count I of the *Gateway Packaging* Lawsuit, Gateway Packaging asserts a claim for misappropriation of trade secrets under 18 U.S.C. § 1836 and the Uniform Trade Secrets Act against all defendants.  (Ex. A, ¶¶ 133-156.)

58.     In Count II, Gateway Packaging alleges tortious interference with a business expectancy or relationship against Morris Packaging, Morris Converting, Below, and Fiore.  (Ex. A, ¶¶ 157-162.)

59.     In Count III, Gateway Packaging alleges unjust enrichment against all defendants.  (Ex. A, ¶¶ 163-168.)

60.     In Count IV, Gateway Packaging alleges civil conspiracy against all defendants.  (Ex. A, ¶¶ 169-174.)

61.     In Counts V and VI, Gateway Packaging alleges breaches of contract by Below and Fiore, respectively.  (Ex. A, ¶¶ 175-196.)

62.     In Count VII, Gateway Packaging alleges a breach of duty of loyalty against Below.  (Ex. A, ¶¶ 197-206.)

301806673v1 1007381

63. In Count VIII, Gateway Packaging asserts a claim for breach of fiduciary duty against Fiore. (Ex. A, ¶¶ 207-212.)

## THE SELECTIVE POLICY

64. Selective issued a multi-peril commercial lines insurance policy to Morris Packaging under policy number S 1748460, which provided coverage for the period of May 18, 2017 to May 18, 2018 (the "Selective Policy"). The Selective Policy includes, among other things, business liability coverage subject to a $1,000,000 limit of liability per "occurrence" and a general aggregate limit of $3,000,000. Selective also provided commercial umbrella liability coverage subject to a $9,000,000 limit of liability per "occurrence" and a general aggregate limit of $9,000,000. (A copy of the Policy is attached hereto as **Exhibit B** and incorporated herein by reference.)

## COUNT I

## MORRIS CONVERTING IS NOT AN INSURED UNDER THE SELECTIVE POLICY'S BUSINESS LIABILITY COVERAGE

65. Selective adopts and realleges the allegations in paragraphs 1 through 64 of its Complaint for Declaratory Judgment as paragraph 65 of Count I of its Complaint for Declaratory Judgment as if fully set forth herein.

66. Section C of the Selective Policy's Business Liability Coverage defines who is an insured, in relevant part, as follows:

**C. Who Is An Insured**

1. If you are designated in the Declarations as:

 * * *

 c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

 * * *

301806673v1 1007381

(Ex. B.)

67.     The Selective Policy indicates that Morris Packaging is a limited liability company.  (Ex. B.)

68.     Accordingly, Morris Packaging's members are also insureds, "but only with respect to the conduct of your [i.e., Morris Packaging's] business."  (Ex. B.)

69.     Morris Packaging's managers are also insureds, "but only with respect to their duties as your [i.e., Morris Packaging's] managers."  (Ex. B.)

70.     Here, Morris Converting is neither a member nor a manager of Morris Packaging.

71.     Because Morris Converting is neither a named insured, nor a member of Morris Packaging, nor a manager of Morris Packaging, Morris Converting is not an insured under the Selective Policy.

72.     Selective has and had no duty under the Selective Policy to defend Morris Converting against the *Gateway Packaging* Complaint, or to indemnify Morris Converting for any judgment or settlement entered in the *Gateway Packaging* Complaint.

73.     An actual controversy exists between Selective, Morris Converting, and Gateway Packaging, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Selective, respectfully prays that this Honorable Court:

a.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Selective Policy;

b.      Find and declare that Morris Converting does not qualify as an insured under the Selective Policy's Business Liability Coverage;

c.      Find and declare that Selective has and had no duty under the Selective Policy's Business Liability Coverage to defend Morris Converting against the *Gateway Packaging* Complaint, or to indemnify Morris Converting for

11

301806673v1 1007381

any judgment or settlement entered in the *Gateway Packaging* Lawsuit; and

d.     Grant Selective such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT II

## MORRIS CONVERTING IS NOT AN INSURED UNDER THE SELECTIVE POLICY'S COMMERCIAL UMBRELLA LIABILITY COVERAGE

74.    Selective adopts and realleges the allegations in paragraphs 1 through 73 of its Complaint for Declaratory Judgment as paragraph 74 of Count II of its Complaint for Declaratory Judgment as if fully set forth herein.

75.    Section II of the Selective Policy's Commercial Umbrella Liability Coverage defines who is an insured, in relevant part, as follows:

**SECTION II – WHO IS AN INSURED**

A.     Except for liability arising out of the ownership, maintenance, or use of "covered autos":

1.     If you are designated in the Declarations as:

* * *

c.     A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

* * *

(Ex. B.)

76.    The Selective Policy indicates that Morris Packaging is a limited liability company.  (Ex. B.)

77.    Accordingly, Morris Packaging's members are also insureds, "but only with respect to the conduct of your [i.e., Morris Packaging's] business."  (Ex. B.)

78.    Morris Packaging's managers are also insureds, "but only with respect to their duties as your [i.e., Morris Packaging's] managers."  (Ex. B.)

12

79. Because Morris Converting is neither a named insured, nor a member of Morris Packaging, nor a manager of Morris Packaging, Morris Converting is not an insured under the Selective Policy.

80. Selective has and had no duty under the Selective Policy to defend Morris Converting against the *Gateway Packaging* Complaint, or to indemnify Morris Converting for any judgment or settlement entered in the *Gateway Packaging* Complaint.

81. An actual controversy exists between Selective, Morris Converting, and Gateway Packaging, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Selective, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Selective Policy;

b. Find and declare that Morris Converting does not qualify as an insured under the Selective Policy's Commercial Umbrella Liability Coverage;

c. Find and declare that Selective has and had no duty under the Selective Policy's Commercial Umbrella Liability Coverage to defend Morris Converting against the *Gateway Packaging* Complaint, or to indemnify Morris Converting for any judgment or settlement entered in the *Gateway Packaging* Lawsuit; and

d. Grant Selective such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III

## NO "PERSONAL AND ADVERTISING INJURY" AS DEFINED IN THE BUSINESSOWNERS COVERAGE FORM

82. Selective adopts and realleges the allegations in paragraphs 1 through 81 of its Complaint for Declaratory Judgment as paragraph 82 of Count III of its Complaint for Declaratory Judgment as if fully set forth herein.

13

83. The *Gateway Packaging* Complaint does not seek damages for "bodily injury" or "property damage" and, therefore, provisions of the Businessowners Coverage Form relating to "bodily injury" and "property damage" are not germane to this Complaint for Declaratory Judgment.

84. The Businessowners Coverage Form provides, in relevant part, the following with respect to the liability coverage afforded therein:

**SECTION II – LIABILITY**

**A.    Coverages**

    **1.    Business Liability**

        **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. * * *

                        * * *

        **b.**    Thus insurance applies:

                        * * *

           **(2)**    To "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

                        * * *

(Ex. B.)

85. The Businessowners Coverage Form defines the terms "advertisement" and "personal and advertising injury" as follows:

14

1.     "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    a.     Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    b.     Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

\* \* \*

14.     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a.     False arrest, detention or imprisonment;

    b.     Malicious prosecution;

    c.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.     Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.     The use of another's advertising idea in your "advertisement"; or

    g.     Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

(Ex. B.)

86.     Here, the *Gateway Packaging* Lawsuit asserts claims for misappropriation of trade secrets, tortious interference with a business expectancy or relationship, unjust enrichment, civil conspiracy, breach of contract, and breach of fiduciary duties. (Ex. A.)

15

87.     Each of the claims set forth in the *Gateway Packaging* Lawsuit arises from the alleged misappropriation of trade secrets by, among others, Morris Packaging, Morris Converting, Below, and Fiore.

88.     Misappropriation of trade secrets is not one of the seven specifically-enumerated acts that constitutes "personal and advertising injury" under the plain meaning of the Selective Policy's Businessowners Coverage Form.

89.     Additionally, even if, for the sake of argument, the *Gateway Packaging* Lawsuit alleged infringement of "another's copyright, trade dress or slogan" – which it does not – the Selective Policy's Business Liability Coverage would still not be triggered because any such infringement was not used in Morris Packaging's "advertisement".

90.     Rather, the *Gateway Packaging* Lawsuit alleges that Morris Packaging, Morris Converting, Below, Fiore, and others misappropriated Gateway Packaging's trade secrets, thereby allowing Morris Packaging to reproduce Gateway Packaging's PBOM hybrid bag for use in the packaging of pet foods – not to attract customers or supporters by broadcast or publication to the general public.

91.     The Selective Policy's Businessowners Coverage Form does not provide coverage for Morris Packaging, Morris Converting, Below, and/or Fiore because the *Gateway Packaging* Complaint does not allege damages arising from "personal and advertising injury" as that term is defined in the Businessowners Coverage Form.

92.     Selective has and had no duty under the Selective Policy to defend Morris Packaging, Morris Converting, Below, and/or Fiore against the *Gateway Packaging* Complaint, or to indemnify Morris Packaging, Morris Converting, Below, and/or Fiore for any judgment or settlement entered in the *Gateway Packaging* Complaint.

301806673v1 1007381

93.     An actual controversy exists between Selective, Morris Packaging, Morris Converting, Below, Fiore and Gateway Packaging, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Selective, respectfully prays that this Honorable Court:

a.      Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Selective Policy;

b.      Find and declare that the *Gateway Packaging* Lawsuit does not allege "personal and advertising injury" as defined in the Selective Policy's Businessowners Coverage Form;

c.      Find and declare that Selective has and had no duty under the Selective Policy's Businessowners Coverage Form to defend Morris Packaging, Morris Converting, Below, and/or Fiore against the *Gateway Packaging* Complaint, or to indemnify Morris Packaging, Morris Converting, Below, and/or Fiore for any judgment or settlement entered in the *Gateway Packaging* Lawsuit; and

d.      Grant Selective such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT IV

## THE BUSINESS LIABILITY COVERAGE'S "PERSONAL AND ADVERTISING INJURY" EXCLUSION BARS COVERAGE FOR THE CLAIMS ASSERTED IN THE *GATEWAY PACKAGING* LAWSUIT

94.     Selective adopts and realleges the allegations in paragraphs 1 through 93 of its Complaint for Declaratory Judgment as paragraph 94 of Count IV of its Complaint for Declaratory Judgment as if fully set forth herein.

95.     The Selective Policy incorporates the following exclusion applicable to the Selective Policy's Business Liability Coverage:

**B.      Exclusions**

**1.      Applicable To Business Liability Coverage**

This insurance does not apply to:

17

**p.** "Personal and advertising injury":

**(12)** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

(Ex. B.) (hereinafter, the "Personal and Advertising Injury Exclusion").

96. Count I of the *Gateway Packaging* Lawsuit explicitly asserts a claim for misappropriation of trade secrets against Morris Packaging, Morris Converting, Below, and Fiore. (Ex. A, ¶¶ 133-156.)

97. All counts of the *Gateway Packaging* Lawsuit arise out of the alleged misappropriation of trade secrets by Morris Packaging, Morris Converting, Below, and/or Fiore. (Ex. A.)

98. Pleading in the alternative, to the extent that the *Gateway Packaging* Complaint alleges "personal and advertising injury," which Selective expressly denies that it does, the Selective Policy's Personal and Advertising Injury Exclusion bars coverage for the claims asserted in the *Gateway Packaging* Complaint.

99. Selective has and had no duty under the Selective Policy to defend Morris Packaging, Morris Converting, Below, and/or Fiore against the *Gateway Packaging* Complaint, or to indemnify Morris Packaging, Morris Converting, Below, and/or Fiore for any judgment or settlement entered in the *Gateway Packaging* Complaint.

100. An actual controversy exists between Selective, Morris Packaging, Morris Converting, Below, Fiore and Gateway Packaging, and by the terms and provisions of 28 U.S.C.

§ 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Selective, respectfully prays that this Honorable Court:

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Selective Policy;

b.    Find and declare that the Business Liability Coverage's "Personal and Advertising Injury" Exclusion bars coverage for the claims asserted in the *Gateway Packaging* Lawsuit;

c.    Find and declare that Selective has and had no duty under the Selective Policy's Business Liability Coverage to defend Morris Packaging, Morris Converting, Below, and/or Fiore against the *Gateway Packaging* Complaint, or to indemnify Morris Packaging, Morris Converting, Below, and/or Fiore for any judgment or settlement entered in the *Gateway Packaging* Lawsuit; and

d.    Grant Selective such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT V

### THE BUSINESS LIABILITY COVERAGE'S "ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION" EXCLUSION BARS COVERAGE FOR THE CLAIMS ASSERTED IN THE *GATEWAY PACKAGING* LAWSUIT

101.    Selective adopts and realleges the allegations in paragraphs 1 through 100 of its Complaint for Declaratory Judgment as paragraph 101 of Count V of its Complaint for Declaratory Judgment as if fully set forth herein.

102.    The Selective Policy incorporates the following exclusion applicable to the Selective Policy's Business Liability Coverage:

### EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION
* * *

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM
* * *

19

**A.** The following is added to Paragraph **B.1.** of **Section II – Liability**:

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

1. Any damages arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

2. "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

\* \* \*

(Ex. B.) (hereinafter referred to as the "Disclosure of Confidential Information Exclusion").

103. The *Gateway Packaging* Lawsuit is premised on the alleged misappropriation of Gateway Packaging's trade secrets by Morris Packaging, Morris Converting, Below, and Fiore. (Ex. A.)

104. This misappropriation of trade secrets allegedly related to confidential information about Gateway Packaging's processing methods. (Ex. A.)

105. Pleading in the alternative, to the extent that the *Gateway Packaging* Complaint alleges "personal and advertising injury," which Selective expressly denies that it does, the Selective Policy's Disclosure of Confidential Information Exclusion bars coverage for the claims asserted in the *Gateway Packaging* Complaint.

106. Selective has and had no duty under the Selective Policy to defend Morris Packaging, Morris Converting, Below, and/or Fiore against the *Gateway Packaging* Complaint,

20

or to indemnify Morris Packaging, Morris Converting, Below, and/or Fiore for any judgment or settlement entered in the *Gateway Packaging* Complaint.

107.     An actual controversy exists between Selective, Morris Packaging, Morris Converting, Below, Fiore and Gateway Packaging, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Selective, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Selective Policy;

b.     Find and declare that the Business Liability Coverage's "Disclosure of Confidential Information Exclusion" bars coverage for the claims asserted in the *Gateway Packaging* Lawsuit;

c.     Find and declare that Selective has and had no duty under the Selective Policy's Business Liability Coverage to defend Morris Packaging, Morris Converting, Below, and/or Fiore against the *Gateway Packaging* Complaint, or to indemnify Morris Packaging, Morris Converting, Below, and/or Fiore for any judgment or settlement entered in the *Gateway Packaging* Lawsuit; and

d.     Grant Selective such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT VI

## NO "PERSONAL AND ADVERTISING INJURY" AS DEFINED IN THE COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

108.     Selective adopts and realleges the allegations in paragraphs 1 through 107 of its Complaint for Declaratory Judgment as paragraph 108 of Count VI of its Complaint for Declaratory Judgment as if fully set forth herein.

109.     The *Gateway Packaging* Complaint does not seek damages for "bodily injury" or "property damage" and, therefore, provisions of the Commercial Umbrella Liability Coverage

301806673v1 1007381

Form relating to "bodily injury" and "property damage" are not germane to this Complaint for Declaratory Judgment.

110.    The Selective Policy's Commercial Umbrella Liability Coverage Form provides, in relevant part, the following with respect to the liability coverage afforded therein:

## COMMERCIAL UMBRELLA LIABILITY COVERAGE
* * *

## SECTION I – COVERAGES

**A.     Insuring Agreement**

    **1.**     We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" or offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. * * *

* * *

    **6.**     This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

* * *

(Ex. B.)

22

301806673v1 1007381

111. Similar to the Businessowners Coverage Form, the Commercial Liability Umbrella Form defines the terms "advertisement" and "personal and advertising injury" as follows:

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

                          * * *

13. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication in any manner of material that violates a person's right of privacy; or

   e. Oral or written publication in any manner of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or service.

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

   h. Discrimination because of race, religion, age, sex or physical disability.

      This does not apply:

23

301806673v1 1007381

> **(1)** To offenses committed by or at the direction of the insured; or
>
> **(2)** If insurance for such offenses is prohibited by law;
>
> committed during the policy period.
>
> * * *

(Ex. B.)

112. Here, the *Gateway Packaging* Lawsuit asserts claims for misappropriation of trade secrets, tortious interference with a business expectancy or relationship, unjust enrichment, civil conspiracy, breach of contract, and breach of fiduciary duties. (Ex. A.)

113. Each of the claims set forth in the *Gateway Packaging* Lawsuit arises from the alleged misappropriation of trade secrets by, among others, Morris Packaging, Morris Converting, Below, and Fiore.

114. Misappropriation of trade secrets is not one of the seven specifically-enumerated acts that constitutes "personal and advertising injury" under the plain meaning of the Selective Policy's Commercial Umbrella Liability Coverage Form.

115. Additionally, even if, for the sake of argument, the *Gateway Packaging* Lawsuit alleged infringement of "another's copyright, trade dress or slogan" – which it does not – the Selective Policy's Commercial Umbrella Liability Coverage would still not be triggered because any such infringement was not used in Morris Packaging's "advertisement".

116. Rather, the *Gateway Packaging* Lawsuit alleges that Morris Packaging, Morris Converting, Below, Fiore, and others misappropriated Gateway Packaging's trade secrets, thereby allowing Morris Packaging to reproduce Gateway Packaging's PBOM hybrid bag for use in the packaging of pet foods – not to attract customers or supporters by broadcast or publication to the general public.

24

117.    The Selective Policy's Commercial Umbrella Liability Coverage Form does not provide coverage for Morris Packaging, Morris Converting, Below, and/or Fiore because the *Gateway Packaging* Complaint does not allege damages arising from "personal and advertising injury" as that term is defined in the Commercial Umbrella Liability Coverage Form.

118.    Selective has and had no duty under the Selective Policy to defend Morris Packaging, Morris Converting, Below, and/or Fiore against the *Gateway Packaging* Complaint, or to indemnify Morris Packaging, Morris Converting, Below, and/or Fiore for any judgment or settlement entered in the *Gateway Packaging* Complaint.

119.    An actual controversy exists between Selective, Morris Packaging, Morris Converting, Below, Fiore and Gateway Packaging, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Selective, respectfully prays that this Honorable Court:

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Selective Policy;

b.    Find and declare that the *Gateway Packaging* Lawsuit does not allege "personal and advertising injury" as defined in the Selective Policy's Commercial Umbrella Liability Coverage Form;

c.    Find and declare that Selective has and had no duty under the Selective Policy's Commercial Umbrella Liability Coverage Form to defend Morris Packaging, Morris Converting, Below, and/or Fiore against the *Gateway Packaging* Complaint, or to indemnify Morris Packaging, Morris Converting, Below, and/or Fiore for any judgment or settlement entered in the *Gateway Packaging* Lawsuit; and

d.    Grant Selective such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT VII

## THE COMMERCIAL UMBRELLA LIABILITY COVERAGE'S "INFRINGEMENT OF COPYRIGHT, PATENT, TRADEMARK OR TRADE SECRET" EXCLUSION BARS

301806673v1 1007381

## COVERAGE FOR THE CLAIMS ASSERTED IN THE *GATEWAY PACKAGING* LAWSUIT

120.    Selective adopts and realleges the allegations in paragraphs 1 through 119 of its Complaint for Declaratory Judgment as paragraph 120 of Count VII of its Complaint for Declaratory Judgment as if fully set forth herein.

121.    The Selective Policy incorporates the following exclusion applicable to the Selective Policy's Commercial Umbrella Liability Coverage:

**B.      Exclusions**

> This insurance does not apply to:
>
> \* \* \*

> **14.    Personal and Advertising Injury**
>
> \* \* \*

> **(h)**    "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.
>
> However, this exclusion does not apply to infringement, in your "advertisement" of copyright, trade dress or slogan.

(Ex. B.) (Hereinafter, the "Infringement of Copyright, Patent, Trademark or Trade Secret Exclusion")

122.    Count I of the *Gateway Packaging* Lawsuit explicitly asserts a claim for misappropriation of trade secrets against Morris Packaging, Morris Converting, Below, and Fiore.  (Ex. A, ¶¶ 133-156.)

123.    All counts of the *Gateway Packaging* Lawsuit arise out of the alleged misappropriation of trade secrets by Morris Packaging, Morris Converting, Below, and/or Fiore. (Ex. A.)

124.     Pleading in the alternative, to the extent that the *Gateway Packaging* Complaint alleges "personal and advertising injury," which Selective expressly denies that it does, the Selective Policy's Infringement of Copyright, Patent, Trademark or Trade Secret Exclusion bars coverage for the claims asserted in the *Gateway Packaging* Complaint.

125.     Selective has and had no duty under the Selective Policy to defend Morris Packaging, Morris Converting, Below, and/or Fiore against the *Gateway Packaging* Complaint, or to indemnify Morris Packaging, Morris Converting, Below, and/or Fiore for any judgment or settlement entered in the *Gateway Packaging* Complaint.

126.     An actual controversy exists between Selective, Morris Packaging, Morris Converting, Below, Fiore and Gateway Packaging, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Selective, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Selective Policy;

b.     Find and declare that the Commercial Umbrella Liability Coverage's "Infringement of Copyright, Patent, Trademark or Trade Secret" Exclusion bars coverage for the claims asserted in the *Gateway Packaging* Lawsuit;

c.     Find and declare that Selective has and had no duty under the Selective Policy's Commercial Umbrella Liability Coverage to defend Morris Packaging, Morris Converting, Below, and/or Fiore against the *Gateway Packaging* Complaint, or to indemnify Morris Packaging, Morris Converting, Below, and/or Fiore for any judgment or settlement entered in the *Gateway Packaging* Lawsuit; and

d.     Grant Selective such other and further relief that the Court deems proper under the facts and circumstances.

301806673v1 1007381

**THE COMMERCIAL UMBRELLA LIABILITY COVERAGE'S "BREACH OF CONTRACT" EXCLUSION BARS COVERAGE FOR THE CLAIMS ASSERTED AGAINST BELOW AND FIORE IN COUNTS V AND VI OF THE *GATEWAY PACKAGING* LAWSUIT**

127. Selective adopts and realleges the allegations in paragraphs 1 through 126 of its Complaint for Declaratory Judgment as paragraph 127 of Count VIII of its Complaint for Declaratory Judgment as if fully set forth herein.

128. The Selective Policy incorporates the following exclusion applicable to the Selective Policy's Commercial Umbrella Liability Coverage:

**B.      Exclusions**

>      This insurance does not apply to:
>                               * * *

>      **14.      Personal and Advertising Injury**
>                               * * *

>           **(E)**      "Personal and advertising injury" arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

(Ex. B.) (Hereinafter, the "Breach of Contract Exclusion")

129. Count V of the *Gateway Packaging* Lawsuit explicitly asserts a claim for breach of contract against Below. (Ex. A, ¶¶ 175-184.)

130. Count VI of the *Gateway Packaging* Lawsuit explicitly asserts a claim for breach of contract against Fiore. (Ex. A, ¶¶ 185-196.)

131. Pleading in the alternative, to the extent that the *Gateway Packaging* Complaint alleges "personal and advertising injury," which Selective expressly denies that it does, the Selective Policy's Breach of Contract Exclusion bars coverage for the claims asserted against Below and Fiore in Counts V and VI of the *Gateway Packaging* Complaint.

28

132.     Selective has and had no duty under the Selective Policy to defend Below and/or Fiore against the *Gateway Packaging* Complaint to the extent that the *Gateway Packaging* Complaint asserts claims for breach of contract.

133.     An actual controversy exists between Selective, Below, Fiore and Gateway Packaging, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Selective, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Selective Policy;

b.     Find and declare that the Commercial Umbrella Liability Coverage's "Breach of Contract" Exclusion bars coverage for the claims asserted against Below and Fiore in Counts V and VI of the *Gateway Packaging* Lawsuit;

c.     Find and declare that Selective has and had no duty under the Selective Policy's Commercial Umbrella Liability Coverage to defend Below and/or Fiore against the *Gateway Packaging* Complaint, or to indemnify Below and/or Fiore for any judgment or settlement entered in the *Gateway Packaging* Lawsuit; and

d.     Grant Selective such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT IX

### THE COMMERCIAL UMBRELLA LIABILITY COVERAGE'S "ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY" EXCLUSION BARS COVERAGE FOR THE CLAIMS ASSERTED IN THE *GATEWAY PACKAGING* LAWSUIT

134.     Selective adopts and realleges the allegations in paragraphs 1 through 133 of its Complaint for Declaratory Judgment as paragraph 134 of Count IX of its Complaint for Declaratory Judgment as if fully set forth herein.

301806673v1 1007381

135.    Through the Commercial Umbrella Liability 2015 Changes Endorsement (Form CXL 462 11 15), the Commercial Umbrella Liability coverage also incorporates the following exclusion:

**E.**    The following is added to **SECTION I – COVERAGES, B. Exclusions:**

**Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

This insurance does not apply to:

**(1)**    Damages because of "bodily injury", "property damage", or "personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.
* * *

(Ex. B.) (Hereinafter the "Confidential Information Exclusion")

136.    The *Gateway Packaging* Lawsuit is premised on the alleged misappropriation of Gateway Packaging's trade secrets by Morris Packaging, Morris Converting, Below, and Fiore. (Ex. A.)

137.    This misappropriation of trade secrets allegedly related to confidential information about Gateway Packaging's processing methods. (Ex. A.)

138.    Pleading in the alternative, to the extent that the *Gateway Packaging* Complaint alleges "personal and advertising injury," which Selective expressly denies that it does, the Selective Policy's Confidential Information Exclusion bars coverage for the claims asserted in the *Gateway Packaging* Complaint.

139.    Selective has and had no duty under the Selective Policy to defend Morris Packaging, Morris Converting, Below, and/or Fiore against the *Gateway Packaging* Complaint,

301806673v1 1007381

or to indemnify Morris Packaging, Morris Converting, Below, and/or Fiore for any judgment or settlement entered in the *Gateway Packaging* Complaint.

140. An actual controversy exists between Selective, Morris Packaging, Morris Converting, Below, Fiore and Gateway Packaging, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Selective, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Selective Policy;

b. Find and declare that the Commercial Umbrella Liability Coverage's "Confidential Information Exclusion" bars coverage for the claims asserted in the *Gateway Packaging* Lawsuit;

c. Find and declare that Selective has and had no duty under the Selective Policy's Commercial Umbrella Liability Coverage to defend Morris Packaging, Morris Converting, Below, and/or Fiore against the *Gateway Packaging* Complaint, or to indemnify Morris Packaging, Morris Converting, Below, and/or Fiore for any judgment or settlement entered in the *Gateway Packaging* Lawsuit; and

d. Grant Selective such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT X

### THE COMMERCIAL UMBRELLA LIABILITY COVERAGE'S "PERSONAL AND ADVERTISING INJURY LIMITATION" BARS COVERAGE FOR THE CLAIMS ASSERTED IN THE *GATEWAY PACKAGING* LAWSUIT

141. Selective adopts and realleges the allegations in paragraphs 1 through 140 of its Complaint for Declaratory Judgment as paragraph 141 of Count X of its Complaint for Declaratory Judgment as if fully set forth herein.

142. The Selective Policy's Commercial Umbrella Liability Coverage Form incorporates the following limitation relating to "personal and advertising injury":

31

## PERSONAL AND ADVERTISING INJURY LIMITATION
### * * *

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

This insurance does not apply to any claims made or "suits" brought against the insured for liability arising out of "personal and advertising injury".

This exclusion does not apply to the extent that coverage is provided for the insured by the "underlying insurance".

(hereinafter, the "Personal and Advertising Injury Limitation").

143. Here, as alleged above, the "underlying insurance" (i.e., the Businessowners Coverage Form) does not provide coverage for the claims asserted in the *Gateway Packaging* Lawsuit.

144. As such, the Commercial Umbrella Liability Coverage does not apply to any claims made or suits brought against Morris Packaging to the extent those claims are not covered by the underlying Businessowners Coverage Form.

145. Selective has and had no duty under the Selective Policy to defend Morris Packaging, Morris Converting, Below, and/or Fiore against the *Gateway Packaging* Complaint, or to indemnify Morris Packaging, Morris Converting, Below, and/or Fiore for any judgment or settlement entered in the *Gateway Packaging* Complaint.

146. An actual controversy exists between Selective, Morris Packaging, Morris Converting, Below, Fiore and Gateway Packaging, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Selective, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Selective Policy;

301806673v1 1007381

b. Find and declare that the Commercial Umbrella Liability Coverage's "Personal and Advertising Injury Limitation" bars coverage for the claims asserted in the *Gateway Packaging* Lawsuit;

c. Find and declare that Selective has and had no duty under the Selective Policy's Commercial Umbrella Liability Coverage to defend Morris Packaging, Morris Converting, Below, and/or Fiore against the *Gateway Packaging* Complaint, or to indemnify Morris Packaging, Morris Converting, Below, and/or Fiore for any judgment or settlement entered in the *Gateway Packaging* Lawsuit; and

d. Grant Selective such other and further relief that the Court deems proper under the facts and circumstances.

### HINSHAW & CULBERTSON LLP

By: ___/s/ Josephine Abshier___
JOSEPHINE ABSHIER #56708
701 Market Street, Suite 1375
St. Louis, MO 63101-1843
P: (314) 241-2600
F: (314) 241-7428
jabshier@hinshawlaw.com
*Attorneys for Plaintiff Selective Insurance*
*Company of the Southeast*

33

301806673v1 1007381